**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FLORIDA ACTION COMMITTEE, INC.,

      Plaintiff,

v.                            Case No:  6:15-cv-1525-Orl-40GJK

SEMINOLE COUNTY and DONALD F.
ESLINGER in his official capacity,

      Defendants.

_____

**<u>ORDER</u>**

This cause comes before the Court on the following:

1. Defendant Sheriff Eslinger's Motion to Dismiss Amended Complaint (Doc. 44), filed January 8, 2016;

2. Defendant Seminole County's Motion to Dismiss Plaintiff's Amended Complaint for Declaratory and Injunctive Relief (Doc. 45), filed January 8, 2016; and

3. Plaintiff's Omnibus Response to Defendants' Motions to Dismiss (Doc. 52), filed February 4, 2016.

Upon consideration, Defendants' motions to dismiss are due to denied.

## I.    BACKGROUND

Plaintiff, Florida Action Committee, Inc. ("FAC"), is a non-profit, voluntary membership organization formed under section 501(c)(4) of the Internal Revenue Code. (Doc. 52-1, ¶ 1).  FAC states that it has approximately 650 members across Florida, many of whom (but not all) are registered sexual offenders or sexual predators.  (Doc. 32, ¶ 12). FAC affirms that its "mission is to educate the media, legislators, and the public with the

facts surrounding sex offender laws." (*Id.* ¶ 8).   FAC pursues this mission in part by engaging in litigation to challenge laws which target sexual offenders and predators. (Doc. 52-1, ¶ 4).

To that end, FAC brings this action against Defendants, Seminole County and Seminole County Sheriff Donald F. Eslinger in his official capacity (collectively, "Seminole County"),[1] to assert a number of constitutional challenges against Seminole County Ordinance 2005-41 (hereinafter referred to as the "Ordinance"),[2] which was enacted on October 3, 2005 and is codified in Chapter 228 of the Seminole County Code (hereinafter cited as "SCC").   In pertinent part, the Ordinance establishes a 1,000-foot exclusion zone around every school, daycare center, park, and playground within Seminole County's jurisdictional limits and proscribes sexual offenders and predators from traveling through or remaining in these exclusion zones.   SCC § 228.2.   The Ordinance provides a number of exceptions to these restrictions, such as when a sexual offender or predator travels for work, education, medical, religious, or legal reasons, or in the case of an emergency. *See id.* § 228.2(a)–(j).   Violation of the Ordinance constitutes a misdemeanor and is punishable by a fine of up to $500.00 and/or sixty days in jail.   *See id.* § 1.8.

FAC contends that the Ordinance violates some of its members' constitutional rights in a number of ways.   First, FAC claims that the Ordinance is impermissibly vague and violates the guarantees of procedural due process enshrined in the Fourteenth Amendment.   Next, FAC challenges the Ordinance as an unconstitutional ex post facto

---

[1]   Because a lawsuit against a local government employee in his official capacity is actually a lawsuit against the local government itself, the Court will refer to Sheriff Eslinger and Seminole County collectively throughout this Order unless otherwise indicated. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

[2]   The Ordinance is attached to this Order as Appendix A and is available online at https://www2.municode.com/library/fl/seminole_county/codes/code_of_ordinances?nodeId=CH228SEOFSEPR (last visited June 17, 2016).

law.  FAC additionally alleges that the Ordinance infringes on the first amendment right to freedom of association.  Finally, FAC argues that the Ordinance infringes the right to intrastate travel guaranteed by the Florida Constitution.  FAC seeks declaratory and injunctive relief for these constitutional injuries through 42 U.S.C. § 1983.  Seminole County now moves to dismiss FAC's Amended Complaint in its entirety.[3]

## II.  DISCUSSION

Seminole County moves to dismiss FAC's Amended Complaint for lack of standing and for failing to state claims upon which relief can be granted.  Because FAC's standing to bring this lawsuit implicates the Court's subject matter jurisdiction, the Court must resolve that issue first.  The Court will then turn to the sufficiency of each of FAC's claims.

### A.    Whether FAC Has Standing

Standing to bring and maintain a lawsuit is a fundamental component of a federal court's subject matter jurisdiction.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013).  Challenges to standing therefore attack the court's subject matter jurisdiction to adjudicate the parties' dispute.  *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam).  Attacks on standing come in two forms: facial and factual.  *Id.*  In a facial attack, the court looks to the face of the complaint and determines whether the plaintiff sufficiently alleges standing.  *Id.* at 1232–33.  In doing so, the court is limited to the complaint's allegations and exhibits, which the court must accept as true.  *Id.*  In contrast, a factual attack contests the plaintiff's standing in fact, regardless of what the complaint says.  *McElmurray v. Consol. Gov't of*

---

[3]    The Court notes that Seminole County and Sheriff Eslinger filed separate motions to dismiss.  However, because the County's motion adopts and incorporates by reference Sheriff Eslinger's motion, the Court will cite only to Sheriff Eslinger's motion in this Order.

*Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).   When confronting a factual attack, the court affords no presumption of truth to the complaint and may consider matters outside of its allegations and exhibits, such as affidavits, testimony, and other evidence.   *Id.*   The party invoking a federal court's subject matter jurisdiction bears the burden of establishing standing for each claim he or she asserts.   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).   At the pleading stage, this burden is not particularly onerous and will be satisfied by "general factual allegations of injury resulting from the defendant's conduct."   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

An association like FAC will have standing to pursue claims on behalf of its members where three elements are met: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."   *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1354 (11th Cir. 2009).   Seminole County contends that FAC fails the first two elements of associational standing in that (a) none of FAC's members have standing on their own to maintain the claims alleged, and (b) the interests FAC seeks to protect are not germane to its purpose.   (Doc. 44, pp. 7–14).   Seminole County insists that FAC does not actually represent its members, but utilizes its membership as a vehicle to espouse a particular political viewpoint.   Seminole County therefore launches a factual attack on FAC's standing and the Court may look outside the four corners of the Amended Complaint to resolve the issue.

Regarding the first element of associational standing, FAC must show that at least one of its members has standing in their own right to state each of the claims FAC asserts. *See Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1344 (11th Cir. 2005). In order to have individual standing, a plaintiff must demonstrate that he suffered or will imminently suffer an injury-in-fact, that a causal connection exists between this injury and the defendant's conduct, and that his injury will be redressed by a favorable decision. *Id.* Where, as here, a plaintiff files a pre-enforcement constitutional challenge against a law which imposes criminal sanctions, it is not necessary for the plaintiff to subject himself to arrest or prosecution in order to suffer the requisite injury-in-fact; rather, the plaintiff need only establish that he intends to engage in the conduct proscribed by the law and there is a credible threat of prosecution should he engage in that conduct. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). There are three ways a plaintiff can meet this standard: (1) he was actually threatened with application of the law, (2) application of the law is likely, or (3) there is a credible threat of application. *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1245 (11th Cir. 1998).

FAC identifies Doe #3 as one of its members who has individual standing to bring all five of its constitutional claims. In 1990, Doe #3 pled no contest to two charges of lewd and lascivious conduct in the presence of a child. (Doc. 32, ¶ 69). Doe #3 has completed his sentence and now lives in Seminole County. (*Id.* ¶¶ 69–70). Doe #3 is required by state law to register as a sexual offender every six months with the Seminole County Sheriff; as a result, he must abide by the Ordinance's travel restrictions. (*Id.* ¶ 72). Each time Doe #3 registers with the Seminole County Sheriff, he is warned that he is subject to arrest should he violate the Ordinance. (*Id.*). Doe #3 is also required to sign and initial a document titled "Seminole County Sheriff's Office Sexual Offender/Predator Ordinance

Summary," which provides notice of the Ordinance's travel restrictions and cautions that "[a]ny violation of these provisions will be treated as a misdemeanor offense and charged accordingly." (*Id.*; Doc. 32-4).  FAC states that, despite the Ordinance and the Sheriff's summary, Doe #3 does not know where all of the exclusion zones are located and how to avoid them.  (Doc. 32, ¶ 73).  Further, FAC represents that, although Doe #3 does not live within an exclusion zone, his neighborhood is surrounded by exclusion zones.  (*Id.* ¶¶ 74–75).  Doe #3 therefore routinely violates the Ordinance in order to go grocery shopping, visit his bank, and conduct business with the Seminole County government. (*Id.* ¶ 76).  FAC also discloses that Doe #3 violated the Ordinance on one occasion by visiting a park with his niece and her children to watch family members play in a sporting event.  (*Id.* ¶ 78).  While in the park, a police officer approached Doe #3, informed him that he was violating the Ordinance, and directed him to leave the park or else he would be arrested.  (*Id.*).

At this stage of the proceedings, FAC has alleged sufficient factual material to carry its burden of proving that Doe #3 has individual standing to bring each of its constitutional challenges to the Ordinance.  When Doe #3 registers with the Seminole County Sheriff every six months, he is notified of the Ordinance's restrictions and punishments and is required to acknowledge in writing that he received such notice, implying that Seminole County is likely to enforce the Ordinance.  The Seminole County Sheriff additionally warns Doe #3 that he will be arrested should he fail to abide by the Ordinance, constituting a credible threat of application.  Indeed, the one time Doe #3 was found to be in violation of the Ordinance, he was actually threatened with arrest.  Doe #3's previous interactions with Seminole County and the Ordinance along with his stated intention to continue violating the Ordinance out of necessity satisfy all three means of alleging injury-in-fact to

bring this pre-enforcement action. *See Leahy*, 145 F.3d at 1245.   Since Doe #3's threatened injuries are causally linked to Seminole County's Ordinance and a favorable decision would redress these injuries, Doe #3 has individual standing to bring all five constitutional claims alleged in the Amended Complaint.

As to the second element of associational standing, FAC must show that the interests it pursues through this litigation are germane to its organizational purpose. *See Hunt*, 432 U.S. at 343.  This inquiry is "undemanding" and requires "only 'mere pertinence' between the subject of the litigation and the organizational purpose." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1307 (S.D. Fla. 2003) (quoting *Humane Soc'y v. Hodel*, 840 F.2d 45, 58 (D.C. Cir. 1988)).  Stated differently, germaneness only requires that the injury allegedly suffered by the organization's members has "some reasonable connection with the reasons the members joined the organization and with the objectives of the organization." *Med. Ass'n of Ala. v. Schweiker*, 554 F. Supp. 955, 965 (M.D. Ala. 1983), *aff'd per curiam*, 714 F.2d 107 (11th Cir. 1983).

FAC states in the Amended Complaint that it is "a voluntary membership organization that works to reform the sexual offender/predator laws and registry in Florida . . . and advocates for the reform of laws that unreasonably limit the ability of offenders to legally live and work in Florida's communities." (Doc. 32, ¶ 2).  In support of its standing, FAC submits the sworn declaration of its President, Gail Colletta, who describes FAC's purpose and activities in detail.  (Doc. 52-1).  Ms. Colletta confirms that FAC has worked since 2011 to reform Florida's sexual offender and predator laws and explains that FAC accomplishes its objectives in part by engaging in litigation to target laws which FAC's members believe to unconstitutionally infringe on their rights. (*Id.* ¶¶ 1– 2, 4).  To that end, Ms. Colletta estimates that approximately 650 individuals comprise

FAC's membership and states that these members consist of registered sexual offenders and predators, their friends and family, treatment providers, and other members of the general public who support FAC's goals. (*Id.* ¶ 5). Ms. Colletta further discloses that FAC is run by a Board of Directors composed solely of members and that the Board of Directors evaluates potential litigation opportunities presented by FAC's membership. (*See id.* ¶¶ 8, 11, 14, 16). In fact, Ms. Colletta reveals that FAC's Board of Directors first learned of Seminole County's Ordinance through a conference call with its members. (*Id.* ¶ 15).

FAC again provides sufficient facts at this stage of the proceedings to carry its burden of proving that the interests it pursues in this lawsuit are germane to its purpose. FAC shows that part of its purpose is to reform sexual offender and predator laws in Florida, that its members join the organization to help FAC forward that purpose, and that its membership specifically proposed that FAC challenge the Ordinance in this case because they believe the Ordinance has caused and continues to cause their constitutional injuries. The Court is therefore satisfied that the interests FAC seeks to protect through this litigation—reforming a law which imposes travel restrictions on sexual offenders and predators within Seminole County—are germane to its stated purpose and to the injuries allegedly suffered by some of its members.

In sum, the Court finds that FAC carries its burden of demonstrating that at least one of its members has individual standing to bring the constitutional challenges asserted in the Amended Complaint and that the interests FAC seeks to protect through this litigation are germane to its purpose. Because Seminole County does not contest the third element of associational standing—that individual participation of FAC's members in this lawsuit would be unnecessary to resolve FAC's claims or to grant the relief FAC

seeks—the Court concludes that FAC has associational standing sufficient to survive Seminole County's motion to dismiss.

## B.    Whether FAC States Claims for Relief

Seminole County next moves to dismiss all of FAC's constitutional challenges to the Ordinance for failing to state claims under Rule 12(b)(6).  A motion to dismiss made under this rule tests the legal sufficiency of a plaintiff's complaint.  In order to survive the motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face when the plaintiff alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The mere recitation of the elements of a claim are not enough and the district court need not give any credence to legal conclusions that are not supported by sufficient factual material. *Id.*  District courts must accept all well-pleaded allegations within the complaint as true and read the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

"To state a Section 1983 claim, a plaintiff must allege that the defendant acted under color of state law to deprive the plaintiff of a federal right." *Incredible Invs., LLC v. Fernandez-Rundle*, 28 F. Supp. 3d 1272, 1279 (S.D. Fla. 2014).  In this case, FAC alleges that, through the Ordinance, Seminole County has deprived its members of numerous federal and state constitutional rights.  The Court examines each right in turn:

### 1.    Void for Vagueness

Count 1 alleges that the Ordinance is void for vagueness under the Fourteenth Amendment to the United States Constitution.  Challenges based on a law's vagueness are characterized as either "facial" or "as-applied." *See DA Mortg., Inc. v. City of Miami*

*Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007).  In a facial challenge, the plaintiff seeks to invalidate a law in its entirety.  *Id.*  Conversely, a plaintiff who mounts an as-applied challenge seeks to vindicate only his or her own rights with respect to the law.  *Id.*  FAC challenges the Ordinance both on its face and as applied to its members.  (Doc. 32, ¶ 2; Doc. 52, p. 1).

Regardless of whether a plaintiff's vagueness challenge is best characterized as facial, as-applied, or both, it is enough at the pleading stage for the plaintiff to allege sufficient factual material to allow the Court to reasonably infer that the contested law is unconstitutionally vague.  *See Iqbal*, 556 U.S. at 678.  A law is unconstitutionally vague when it fails to provide adequate notice to citizens of what it proscribes or the law provides insufficient guidance on how it is to be applied.  *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1310 (11th Cir. 2009).  Therefore, a plaintiff can state a vagueness claim either by showing (1) the contested law is so unclear that no person of ordinary intelligence would be able to read the law and understand what conduct it prohibits, or (2) the law is so unclear that it effectively empowers police officers, judges, and juries to enforce the law on an ad hoc, subjective, arbitrary, or discriminatory basis.  *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972); *Diversified Numismatics, Inc. v. City of Orlando*, 949 F.2d 382, 386–87 (11th Cir. 1991) (per curiam).  In short, a vagueness claim lies where those who enforce the law or those who are subject to its enforcement "must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

FAC contends that the Ordinance is unconstitutionally vague for two reasons. First, FAC submits that the Ordinance "fails to provide sufficient notice as to where schools, daycare centers, parks and playgrounds are located" such that FAC's registered

members cannot "determine whether or not their travel through public streets pass within a restricted exclusion zone." (Doc. 32, ¶ 94). In support, FAC states that Seminole County does not identify all schools, daycare centers, parks, and playgrounds covered by the Ordinance and that Seminole County does not demarcate exclusion zones so that individuals can know where a particular zone begins. (*Id.* ¶¶ 29, 38, 39). Moreover, although the Ordinance requires Seminole County to provide a map showing all exclusion zones, the map omits private playgrounds which are subject to the Ordinance and is of such poor detail that one would not be able to reasonably rely on it to determine where any particular exclusion zone begins. (*Id.* ¶¶ 40–43). FAC alleges that these deficiencies are exacerbated by the fact that the Ordinance imposes no scienter requirement for a violation; an individual is strictly liable for violating the Ordinance regardless of whether he or she accidentally enters an exclusion zone or whether he or she is able to ascertain where an exclusion zone begins. (*Id.* ¶ 90). Indeed, the Amended Complaint identifies four Does who are members of FAC, have been convicted of various sex crimes, are required to register as sexual offenders or predators, live in Seminole County, and are therefore subject to the Ordinance. (*See id.* ¶¶ 50–51, 60–61, 68–70, 80–82). FAC represents that all four Does do not know where all exclusion zones are and fear that they will be arrested and prosecuted for accidentally violating the Ordinance. (*Id.* ¶¶ 56, 67, 73, 85).

The second theory FAC forwards for invalidating the Ordinance as unconstitutionally vague is that "it fails to adequately define the justifications which allow an individual to enter exclusion zones and thus promotes the arbitrary and discriminatory enforcement of the Ordinance." (*Id.* ¶ 95). FAC says that, although the Ordinance enumerates ten exceptions which permit an individual to travel through an exclusion zone,

some of these exceptions are unclear.  FAC specifically points to the exception which allows individuals to enter an exclusion zone to "[a]ttend to familial or parental obligations."  *See* SCC § 228.2(h). FAC argues that this exception is unclear for its failure to define the terms "familial" and "obligation," (Doc. 32, ¶ 31), and that Doe #1 does not understand whether "familial obligation" includes traveling through an exclusion zone to go to the grocery store to buy food or to a hardware store to purchase home repair items, (*id.* ¶ 77).

FAC asserts that the Ordinance's potential enforcers similarly have trouble interpreting and understanding what the Ordinance proscribes.  One example involves Doe #2, who has no access to a personal vehicle and must rely on public transportation. (*Id.* ¶ 63).  According to FAC, one of Doe #2's probation officers informed him that he would not violate the Ordinance if he needed to stand at a bus stop located within an exclusion zone as long as no children were also present at the bus stop.  (*Id.* ¶ 66).  A second probation officer, however, offered a different interpretation, advising Doe #2 that he would not violate the Ordinance if he needed to utilize a bus stop within an exclusion zone as long as he did not "loiter" at the bus stop.  (*Id.*).  Further still, Doe #2 was threatened with a violation of his probation by a probation officer for riding on a bus that passed near a public park, implying that Doe #2 would violate the Ordinance any time he was within an exclusion zone while using Seminole County's bus system.  (*See id.* ¶ 64). FAC discloses that other members have also received conflicting explanations from law enforcement and probation officials on how the Ordinance is enforced.  While some officials have said that traveling through an exclusion zone does not violate the Ordinance if the individual is moving "from one permitted area to another and they do not stop in the zone," other officials have said that an individual may only travel through an exclusion

zone for a "legitimate reason." (*Id.* ¶ 92). As to the vagueness surrounding the Ordinance's "familial obligation" exception, FAC states that a Seminole County official informed one of its members that he could travel through an exclusion zone to purchase food for his unrelated roommates because they were considered "family" under the Ordinance, but that he could not travel through an exclusion zone to purchase food for only himself. (*Id.*). To FAC's knowledge, Seminole County has not illuminated which, if any, of these standards are correct. (*Id.*).

Based on the facts alleged and a review of the Ordinance, the Court can reasonably infer that the Ordinance is unconstitutionally vague in the ways FAC contends. The Amended Complaint shows that a number of FAC's members have no way of knowing where all prohibited exclusion zones are located because of Seminole County's failure to adequately identify all schools, daycare centers, parks, and playgrounds covered by the Ordinance. This failure of notice is complicated by the Ordinance's imposition of strict liability for a violation, potentially lending to arbitrary and discriminatory enforcement. *See Colautti v. Franklin*, 439 U.S. 379, 395 (1979) ("This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*."); *cf. High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1229 (11th Cir. 1982) ("[T]he inclusion of a specific mens rea element may alleviate a law's vagueness with respect to providing fair notice . . . ."). Indeed, FAC alleges facts demonstrating that Seminole County's own officials differ on what the Ordinance proscribes and how it is to be enforced. As a result, the Court can reasonably infer that both those who enforce the Ordinance and those who are subject to its enforcement must guess at its meaning and differ in its application, thus stating a vagueness claim under the Fourteenth Amendment.

### 2.      Procedural Due Process

Count 2 alleges that the Ordinance violates the Fourteenth Amendment's guarantee to procedural due process.   FAC submits that the Ordinance violates procedural due process for the same reasons it is unconstitutionally vague.  (*See* Doc. 32, ¶¶ 98–100).   It is true that the vagueness of a challenged law necessarily implicates procedural due process.  *See Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1349 (11th Cir. 2011).  The Court therefore agrees with Seminole County that Count 2 is really another iteration of Count 1.  Accordingly, for the same reasons FAC stated a void for vagueness claim in Count 1, FAC also states a procedural due process claim in Count 2.  *See* Section II.B.1, *supra*.

### 3.      Ex Post Facto Clause

Count 3 alleges that the Ordinance violates the Constitution's Ex Post Facto Clause.  To state a claim under the Ex Post Facto Clause, a plaintiff must establish two elements: (1) the challenged law is retrospective, and (2) the law "disadvantage[s] the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)) (citations and internal quotation marks omitted).  A law is retrospective when it "appl[ies] to events occurring before its enactment." *Id.* (quoting *Weaver*, 450 U.S. at 29).  Seminole County does not dispute that the Ordinance is retrospective, as it was enacted in October 2005 and applies to sexual offenders and predators who were convicted and sentenced prior to its enactment.  Instead, Seminole County argues that the Ordinance does not increase the punishment for crime.  Specifically, Seminole County contends that the Ordinance escapes scrutiny under the Ex Post Facto Clause because it is primarily civil in nature in that it "provides an

enforcement mechanism for ensuring that sex offenders do not approach children." (Doc. 44, p. 27).

Whether a law increases punishment for a past crime is ascertained by first determining whether the legislating entity intended the law "to establish 'civil' proceedings" or to inflict punishment. *Smith v. Doe*, 538 U.S. 84, 92 (2003) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). "If the intention of the legislature was to impose punishment, that ends the inquiry." *Id.* However, if the legislating entity intended to create a civil penalty or a non-punitive regulatory scheme, further consideration will need to be given as to whether the law is "so punitive either in purpose or effect as to negate that intention." *United States v. Ward*, 448 U.S. 242, 248–49 (1980). This latter inquiry frequently requires an analysis of the law's text and expressions of legislative intent along with a weighing of other "guideposts" established by the United States Supreme Court. *Id.* These guideposts include:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963) (footnotes omitted).

FAC alleges sufficient facts demonstrating that the Ordinance increases the punishment of past crime. It is enough at this early point in the proceedings to observe that the Ordinance makes it a misdemeanor to travel through or remain within 1,000 feet of a school, daycare center, park, or playground. SCC § 228.2. Moreover, all sexual offenders and predators who are required to register with the Seminole County Sheriff

must sign a document which states that violation of the Ordinance is a misdemeanor and "will be . . . charged accordingly."   (Doc. 32-4).   By imposing arrest and criminal prosecution for a violation, the Court can reasonably infer that Seminole County intended the Ordinance to be criminal in nature, rather than civil or regulatory.  FAC therefore states an Ex Post Facto Clause claim against the Ordinance.

### 4.    The Right to Freedom of Association

Count 4 alleges that the Ordinance infringes the first amendment right to freedom of association.   The First Amendment protects two categories of association: intimate association and expressive association.  *Moore v. Tolbert*, 490 F. App'x 200, 203 (11th Cir. 2012) (per curiam).  The right to intimate association derives from the fundamental right to personal liberty and guarantees that individuals can "enter into and maintain certain intimate human relationships."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984).  On the other hand, the right to expressive association arises out of the activities explicitly identified in the First Amendment and therefore guarantees the right of individuals to associate for purposes of speaking, assembling, petitioning for the redress of grievances, and exercising religion.  *Id.* at 618.  FAC only asserts that the Ordinance violates the right to intimate association.  (Doc. 32, ¶ 106; Doc. 52, pp. 22–23).

A plaintiff who challenges a law on the grounds that it violates the right to intimate association must establish that the law infringes upon a protected personal relationship. *See McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994).  To that end, the United States Supreme Court recognizes a spectrum of personal relationships.  On one end of this spectrum lie those personal relationships "that attend the creation and sustenance of a family—marriage; childbirth; the raising and education of children; and cohabitation with one's relatives."  *Roberts*, 468 U.S. at 619 (citations omitted).  These relationships are

clearly protected under the First Amendment because they are "the most intimate" of human associations.  *Id.* at 620.  On the other end of the spectrum lie those relationships which are completely unattached from the creation and maintenance of a family, such as business and employment relationships and mere acquaintanceships.  *See id.*; *McCabe*, 12 F.3d at 1563.  These relationships are "the most attenuated of personal attachments" and are not sufficient to warrant first amendment protection.  *Roberts*, 468 U.S. at 620; *see also, e.g.*, *Moore*, 490 F. App'x at 203–04 (holding that friendship, without more, is not constitutionally protected); *Cummings v. DeKalb Cty.*, 24 F.3d 1349, 1354 (11th Cir. 1994) (holding that co-worker relationship is not constitutionally protected), *cert. denied*, 513 U.S. 1111 (1995).  "Between these poles, of course, lies a broad range of human relationships that may make greater or lesser claims to constitutional protection . . . ." *Roberts*, 468 U.S. at 620.  Overall, relationships deserving protection will exhibit traits which are quantitatively and qualitatively more akin to familial relationships, such as congeniality, a shared purpose, smallness in size relative to the relationship's shared purpose, selectivity in entering into and maintaining the relationship, and seclusion from others in making decisions important to the relationship.  *See id.*; *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987).

Here, FAC alleges sufficient facts to warrant the reasonable inference that the Ordinance infringes upon a protected personal relationship.  FAC states that Doe #3's niece and her children live in Seminole County and that they have asked Doe #3 to join them at various parks and playgrounds within Seminole County to watch other family members play in sporting events.  (Doc. 32, ¶ 78).  However, because of the Ordinance's travel restrictions, Doe #3 is not permitted to do so.  (*Id.* ¶ 79).  Although FAC offers no other facts describing the character and extent of Doe #3's relationship with his niece and

her children, the Court can reasonably infer that the relationship is closer to the familial end of the Supreme Court's spectrum than not.  Doe #3 is obviously related to his niece and her children and the parties appear to want to maintain a familial relationship by attending family events together.   Because the Ordinance prohibits Doe #3 from associating with his niece and her children at parks and playgrounds, the Court can reasonably infer that the Ordinance infringes on the first amendment right to freedom of intimate association.

### 5.    Infringement of the Right to Intrastate Travel

Finally, Count 5 alleges that the Ordinance infringes the right to intrastate travel guaranteed by Article I, Section 2 of the Florida Constitution.  As recognized by the Florida Supreme Court, the right to travel within the State is well-established:

> Hailing a cab or a friend, chatting on a public street, and simply strolling aimlessly are time-honored pastimes in our society and are clearly protected under Florida as well as federal law.  *All Florida citizens* enjoy the inherent right to window shop, saunter down a sidewalk, and wave to friends and passersby with no fear of arrest.

*State v. J.P.*, 907 So. 2d 1101, 1113 (Fla. 2004) (quoting *Wyche v. State*, 619 So. 2d 231, 235 (Fla. 1993).  Therefore, to state a claim that a law violates the right to intrastate travel, a plaintiff must show that the law limits his ability to move within the State.  *See Catron v. City of St. Petersburg*, 658 F.3d 1260, 1270 (11th Cir. 2011).

FAC easily alleges that the Ordinance limits the movement of its registered members within Florida.  The Ordinance itself explicitly prohibits sexual offenders and predators from traveling through or remaining within a 1,000-foot exclusion zone which surrounds every school, daycare center, park, and playground within Seminole County.  *See* SCC § 228.2.  Due to the sheer number of exclusion zones the Ordinance creates and the breadth of each zone, FAC explains that Doe #1 cannot leave his neighborhood

unless his movement falls within one of the ten exceptions enumerated by the Ordinance. (Doc. 32, ¶¶ 58–59).   Similarly, because Doe #4 lives within an exclusion zone, he is essentially forbidden from leaving his home unless it is for one of the Ordinance's exceptions.   (*Id.* ¶ 84).   Because the Ordinance applies to all sexual offenders and predators in Florida regardless of whether they live in Seminole County, FAC further alleges that the Ordinance limits the movements of those who would otherwise travel through Seminole County on their way to other parts of the State.   (*Id.* ¶ 23).   FAC has additionally attached a map to its Amended Complaint which it contends identifies most of the exclusion zones within Seminole County.   (Doc. 32-3).   According to that map, sexual offenders and predators are barred from entire cities within Seminole County. Based on these factual allegations, the Court can reasonably infer that the Ordinance limits the ability to move within Florida.   FAC therefore states a claim that the Ordinance infringes the right to intrastate travel under the Florida Constitution.

### C. Whether FAC May Seek Injunctive Relief

As a final matter, Seminole County moves to dismiss FAC's demand for injunctive relief should it prevail on any of its constitutional challenges.   (Doc. 44, pp. 34–35). However, only claims for relief are subject to dismissal, not the relief itself.   *See* Fed. R. Civ. P. 12(b)(6); *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002).   Since an injunction is relief rather than a claim for relief, a motion to dismiss is not the appropriate vehicle for its disposal.

### III. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Sheriff Eslinger's Motion to Dismiss Amended Complaint (Doc. 44) is **DENIED**.

2.   Defendant Seminole County's Motion to Dismiss Plaintiff's Amended Complaint for Declaratory and Injunctive Relief (Doc. 45) is **DENIED**.

3.   Defendants shall answer Plaintiff's Amended Complaint within **fourteen (14) days** of this Order.

**DONE AND ORDERED** in Orlando, Florida on June 17, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

## APPENDIX A

Chapter 228 - SEXUAL OFFENDERS AND SEXUAL PREDATORS

FOOTNOTE(S):

--- (**1**) ---

**Editor's note—**Ord. No. 2005-41, § 3, adopted Oct. 3, 2005, set out provisions for Ch. 228 to read as herein set out. See the Code Comparative Table.

Sec. 228.1. - Prohibited residences of sexual offenders and sexual predators.

It is prohibited and unlawful for any sexual offender or sexual predator to abide, lodge or reside in a permanent or temporary residence located within Seminole County when such residence is located within 1,000 feet of any school, day care center, park or playground, regardless of whether the school, day care center, park or playground lies within the jurisdictional limits of Seminole County.

A sexual offender or sexual predator, having a permanent residence within 1,000 feet of any school, day care center, park or playground, does not commit a violation of this section if any of the following apply:

(a) The sexual offender or sexual predator established the permanent residence prior to the effective date of this chapter, provided however, that at the end of the then current rental term, in the case of a lease, the sexual offender or sexual predator shall be required to abandon that permanent residence and establish a new permanent residence at a location that is not within 1,000 feet of any school, day care center, park or playground.

(b) The sexual offender or sexual predator was a minor when committing the offense causing the designation as a sexual predator or sexual offender and was not sentenced as an adult for that offense.

(c) The sexual offender or sexual predator is under the age of 18.

(d) The school, day care center, park or playground was opened or established after the sexual offender or sexual predator established the permanent residence.

Sec. 228.2. - Restriction of certain activities of sexual offenders and sexual predators.

No sexual offender or sexual predator shall travel through or remain within the 1,000 foot buffer zone surrounding any school, daycare center, park or playground except to:

(a) Attend a scheduled meeting with an attorney who is recognized as a licensed member of the Bar of the State of Florida;

(b) Attend a scheduled interview with a social service provider licensed by the State of Florida;

(c) Comply with a request or court order from the judiciary, a correctional facility or a law enforcement entity;

(d) Contact criminal justice personnel at a criminal justice facility;

(e) Attend a church service or function;

(f) Attend a bona fide educational institution as a registered student;

(g) Attend to medical or health care needs with a licensed physician;

(h)   Attend to familial or parental obligations;

(i)   Be gainfully employed or as part of duties imposed by gainful employment;

(j)   Seek refuge during times of impending natural disasters or acts of terrorism, if such schools have been designated by Seminole County or the State of Florida as a place of refuge.

A law enforcement officer shall, prior to any arrest for an offense under this Section 228.2, afford the person an opportunity to explain his or her presence in the area and the purpose thereof. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have authorized the person to be in the area pursuant to one of the exceptions listed above.

Sec. 228.3. - Measurement of distance.

For purposes of measuring separation of a residence from a school, day care center, park or playground, all distances shall be measured from the outermost property line of the parcel upon which the residence is located running in a direct line to the outermost property line of the school, day care center, park or playground. For example, if the residence is located in a generally southwesterly direction from a park, then the measurement would be from the northeast corner of the residential parcel to the southwest corner of the park. For all other purposes, measurements shall run from the outermost property line of the school, day care center, park or playground.

Sec. 228.4. - Required declaration of status as a sexual offender or sexual predator.

(1)   During times of impending natural disasters or acts of terrorism, sexual offenders and sexual predators shall immediately identify themselves as a sexual offender or sexual predator, as the case may be, to the official in charge of any public shelter where they seek refuge.

(2)   A sexual offender or sexual predator attending any school or day care function, must declare his or her status as a sexual offender or sexual predator with the school principal or designee immediately upon entering the school property.

Sec. 228.5. - Photo identification card.

By no later than October 1, 2006, the Seminole County Sheriff's Office shall provide a photo identification card to all sexual offenders and sexual predators currently registered with the Seminole County Sheriff's Office. All new registrants shall receive such a card upon registration. Such card shall include limited biographical information and a registration number. All sexual offenders and sexual predators registered in Seminole County shall carry this card on their person at all times.

Sec. 228.6. - Maps showing schools, daycare centers, parks and playgrounds.

At the time of registration, the Sheriff's Office shall provide all sexual offenders and sexual predators a map showing the location of all schools, day care centers, parks and playgrounds. Failure to receive such a map and failure of the map to identify a particular school, day care center, park or playground shall not be defenses to a claimed violation of this chapter, such map being provided only as a convenience.

Sec. 228.7. - Prohibition on rentals and leaseholds.

It is unlawful for a property owner to knowingly let or rent any place, structure, or part thereof, to a sexual offender or sexual predator, with the knowledge that it will be used as a permanent or temporary residence, if such place, structure, or part thereof, is located within 1,000 feet of any school, day care

center, park or playground. In any prosecution for a violation of this section there shall be the following rebuttable presumptions:

(1)  That the property owner had knowledge that the person letting or renting the premises was a sexual offender or sexual predator, upon proof that the person was registered as same, either in the statewide or local registry; and

(2)  That the place, structure or part thereof would be used as a permanent or temporary residence, upon proof that the property is located within a residential zoning classification.

Sec. 228.8. - Travel on highways and toll roads.

Nothing herein shall prohibit any person from traveling on those roads currently included within the Florida Intrastate Highway System located within the County.